### PONDER v. PONDER et al.
### No. 4898.

Court of Appeal of Louisiana.
Second Circuit.
Dec. 5, 1934.

628

Elder & Elder, of Ruston, for appellant.

·St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, and Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff was injured when an automobile owned by her father and mother, operated by the former, overturned in the nighttime on a sharp curve in the graveled highway between Campti and Natchitoches, La. The palmar surface of the terminus phalanges of the middle and ring fingers of the left hand was cut by flying glass. She brings this suit against her father, mother, and the Home Indemnity Company of New York, insurer, to recover the following named items of damages to her, as a direct result of said injury:

| | |
|---|---|
| Doctors' bills...................... | $15.00 |
| Pain and suffering, past and present ......................... | 500.00 |
| Loss of earning capacity as music teacher ....................... | 9,485.00 |
| Total ...................... | $10,000.00 |

Plaintiff's father, A. M. Ponder, after deciding that he would attend a football game at Natchitoches the evening of October 28, 1932, invited his wife, his daughter (the plaintiff), and a friend by the name of Dupont to accompany him on the trip in the family car. These parties were in the car when the accident occurred. Plaintiff and her mother were on the rear seat. Ponder admits that the road between Campti and Natchitoches was well known to him. It is not disputed that he was driving the car at a speed not in excess of 35 miles per hour when it turned over, and it is conceded that he is a careful and competent operator of automobiles. He says, and it is not seriously disputed, that the reason the car upturned was because he entered the sharp curve, going at said speed, before he knew he was approaching it, and, we deduce, from his effort to keep the car under control and at the same time stay on the road. The presence of loose gravel at the spot probably contributed secondarily to the result. He states he well knew this dangerous curve was in the road, but thought he had already passed it.

Plaintiff alleges and testifies that she well knew her father was familiar with the road on which they were traveling when the accident occurred, and that she was not familiar therewith. Her right to recover, as alleged, is based upon the fact that she was in the car as an invited guest, and that the accident, with resultant injury to her, was caused by and due to the father's carelessness and negligence, in view of his knowledge of the road conditions, in not keeping a proper lookout ahead to observe said sharp curve in time to successfully negotiate it, and to the fact that he erroneously believed he had passed said curve.

The insurer and A. M. Ponder filed exceptions of no cause and no right of action, which were overruled. All defendants in their answers deny that plaintiff was an invited guest of her mother and father when she was injured, and aver that she assisted in planning the trip to Natchitoches and had as much interest in the trip as either of her parents; that there was nothing in the condition of the roadway or in the appearance of the surface of the road to indicate that there was any danger of the car skidding and that the skidding of the car occurred without fault on the part of A. M. Ponder, and does not constitute negligence; that A. M. Ponder, after the car began to skid, did everything a careful and prudent driver should have done in the cir-

cumstances to retain control of the automobile and prevent an accident.

Issuance of the insurance policy on the Ponder car is admitted. Liability thereunder for damages sued for by plaintiff, if any be due her, is not seriously denied. All other material allegations of fact in the petition are denied. They further plead:

"27. That in the alternative and only in the event it should be found that A. M. Ponder or Mrs. A. M. Ponder were in any way negligent (which is not admitted but specifically denied), defendant pleads that plaintiff was guilty of independent contributory negligence in that she was familiar with the road on which the automobile was being operated and did not protest or warn her father, A. M. Ponder, that he was driving too fast or driving in a careless and reckless manner.

"28. That further, in the alternative, defendant pleads that plaintiff and her parents were engaged in a joint venture and any action of negligence on the part of either A. M. Ponder or Mrs. A. M. Ponder is attributable to plaintiff."

The trial court awarded plaintiff judgment against A. M. Ponder and the Home Indemnity Company of New York, in solido, for $515, rejected her demand against Mrs. Ponder, and specifically rejected her demand for damages for loss of earning capacity as a teacher of music. From this judgment, plaintiff has appealed. She only complains of the inadequacy of the amount of damages given her, not of the rejection of her demand as against Mrs. Ponder. In answer to this appeal, the Home Indemnity Company reurges the exception of no cause and no right of action filed by it in limine, and overruled; and in the alternative, should this relief not be granted, that company, joined by A. M. Ponder, prays that the judgment be reversed and plaintiff's demands rejected; and further, in the alternative, they pray that the judgment be reduced to $250.

The exception of no cause and no right of action is not touched on in defendants' brief. We assume it has been abandoned. It will be so treated.

We have studied the record in the case quite thoroughly. The trial judge gave lengthy written reasons for the conclusions reached by him on all points in the case. We concur in these conclusions. After paraphrasing the pleadings and stating the position and contentions of both sides, as we have done hereinabove, the judge a quo says:

"I think the plaintiff's position is the correct one. Mr. Ponder was reasonably familiar with the highway in the vicinity of the accident. He is a traveling salesman and had traveled the road on numerous occasions. He knew that the curve was there and that it was both sharp and dangerous. If he had been keeping a proper lookout, and the law required him to keep such on that occasion, he would most certainly have seen this curve in time to safely negotiate it. The consequence of his negligence was that he ran into the curve before he saw it, and when he had discovered what he had done, it was then impossible for him to stop the car on the highway, and to follow the highway was impossible for the reason the curve was so sharp that he could not negotiate it without the car turning over. The loose gravel may have aggravated the dangerous situation in which he found himself, but the cause did not originate there. It originated in the driver's carelessness that permitted the car to get caught in such a situation. The testimony shows that Mr. Ponder was driving at a reasonable speed, one at which he could have safely negotiated the curve if he had been watching his business in driving the car as he should have been. The speed of the car had nothing to do with the accident primarily, yet, when he tried to make the curve after entering it as far as he had, the car could not make the curve and stay on its wheels at the speed it was going. That the situation resulting in the accident was due solely to A. M. Ponder's negligence, I do not have the slightest doubt.

"In the case of Buckley v. Featherstone Garage, 11 La. App. 564, 123 So. 446, 450, the Court of Appeal, through Judge Odom, as its spokesman, said:

"'A motorist must use such diligence and care as is commensurate with the dangerous character of the locality. But even though the danger be slight, he is not absolved from the duty to look ahead.'

"In the case of Theriot v. Tassin et al. (La. App.) 146 So. 729, one very similar to this case, on the question of the duty of the driver in that case, the Court had the following to say:

"'A speed at night is excessive when the car cannot be controlled in an ordinary curve, not dangerous under ordinary speed with the driver looking ahead and attentive to his duty as driver. A driver owes it as a matter of duty to his guest to drive with his car under control, and to keep, particularly at night, a proper lookout ahead so as to be able to follow the road. It is our conclusion that Tassin was not attentive to his duty as driver, and brought on the plaintiff the injuries and

pain, suffering, and losses she has sustained as a result of the overturning of the car. He had no right to expose his guest to dangers and perils due solely to his inattention in driving and lack of proper and ordinary care for their safety while riding in his car.'

"Under the principle thus laid down it does not matter whether the cause of the accident was the speed or some other use of the car, if the cause, whatever, it may be, is chargeable to the inattention to duty of the driver.

"Able counsel for defendants cite a number of cases in support of their contentions in this case, especially the cases of Lorance v. Smith, 173 La. 883, 138 So. 871, 875; Monroe v. D'Aunoy (La. App.) 143 So. 716; and Banta v. Moresi, 9 La. App. 636, 119 So. 900. If the defense in this case were supported by the facts, the cases cited would unquestionably be applicable. But in each of the cases cited the courts found that the driver was not guilty of negligence. Therefore, the principle involved in the cases cited is not applicable to the case at bar.

"Mr. Ponder is an experienced and careful driver. He drove at a reasonable rate of speed on the night and occasion of the accident; but due to his inattention to his duty as driver, he lost his bearings as to his position on the road, resulting in his driving, unawares, into a deep curve, out of which he could not at the moment safely drive his car. It cannot be gainsaid that it was not his duty to give proper attention to his driving so that an emergency, such as he experienced, would not occur. The result, in so far as plaintiff was concerned, was the same as if he had entered the curve at an excessive rate of speed. * * *

■ "The testimony shows that plaintiff was an invited guest on the occasion alleged. She did not originate the idea of the trip, nor did she enter into the making of the plans for it. Mr. Ponder and Mr. Dupont planned the trip, and, naturally, Mr. Ponder invited Mrs. Ponder and plaintiff to go with them. Plaintiff was not familiar with the road and had no control of the operation of the car. She was not in a position, in the car, to observe the road ahead, and did not see the curve until the emergency arose. As I understand the law applicable to the situation, plaintiff had the right to rely on the driver of the car safely operating it, that is, to use ordinary care not to injure her in the operation of the car.

"The duty of the driver of a car to his guest is very clearly laid down in the case of Lorance v. Smith, 173 La. 883, 138 So. 871, 875, in the following language, to-wit:

" 'The rule which prevails in this state and elsewhere is that one who invited another to ride in his automobile as his guest, or permits another to ride as a gratuitous passenger, owes to his guest or the passenger that same duty that he owes to a stranger, which is to use ordinary care not to injure him in the operation of the car. Such guest or passenger has the right to expect the same security as that enjoyed by the host himself. If the driver of the car, the host fails to use such care and is negligent in the operation of his car, and his guest or passenger is injured as a result thereof, his guest or passenger may recover of him such damages as are caused by the injury. This is upon the theory that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." '

"Applying the above well stated rule to the facts of this case the plaintiff, in view of the negligence of the driver of the car, her host, in the operation thereof, is entitled to recover from the driver, A. M. Ponder, for such damages as she sustained as a result of the accident.

"The defendant insurance company does not seriously contend, as a defense to this case, that it is not liable under its policy of insurance for the damages sustained by plaintiff. I interpret the provisions of the policy to cover the injury sustained by plaintiff and plaintiff should have judgment against the insurer, in solido, with the owner and driver of the car, for the amount of the damages sustained. * * *

■ "Plaintiff, as a result of the accident, received a cut across the palmar surface of each of the middle and ring fingers of her left hand. It took about two weeks for the lacerations to heal, during which time she was under the treatment of a doctor. There is present in the area of each wound an abnormal scar tissue. She is and has been ever since the accident in constant and severe pain. She describes her pain as being most excruciating and complains that it runs up her arm from her hand. She also complains that her hand and arm constantly shake. On account of the serious pain in her fingers she cannot permit anything to touch those fingers and cannot play the piano on account of the pain that results to her fingers from their touching the piano keys. On that account she alleges and testifies that she has had to abandon and give up her occupation or trade as a piano teacher. * * *

"Pain is a subjective matter, but I am certain that plaintiff has suffered quite a bit of

pain as the result of this injury. I think the item of $500.00 for pain and suffering is not excessive, but reasonable, and it should be allowed.

"I do not think the injury is permanent. The preponderance of the medical testimony is that it is not and that the pain will soon entirely disappear. There appears to be no reason to the lay mind why it should not."

And, after analyzing the testimony of the several physicians who appeared as witnesses in the case, with regard to those who testified for defendants, the judge a quo says further:

"It is the opinion of all of these doctors that plaintiff is not suffering from nerve tumors. They could find no cause for the pain. There are no objective symptoms indicating a cause for such pain. Plaintiff alleged that the nerves of her fingers, at the point of the scars, were left exposed by the injury. The evidence does not support that allegation. The testimony is conclusively to the contrary. As there are no objective reasons for the pain, I have every reason to believe, from the testimony in the case, that the pain will soon disappear.

■ "Plaintiff is an educated and very cultured young lady. The court has the greatest respect for her testimony. I attach due weight to it. But, in view of the weight of the medical testimony to the contrary, I cannot, only on the strength of her testimony, find that she is permanently injured and that it will be necessary for her to abandon her profession as music teacher.

"The testimony does not show that plaintiff has suffered any financial loss on account of the injury. I am convinced that she has earned as much in the other work in which she has been engaged since the date of the injury as she could or would have earned during that period had she been teaching piano. The testimony shows that there has not been much demand for teachers of piano since the fall of 1932, due to the financial condition of the country."

Defendants cite Banta v. Moresi, 9 La. App. 636, 119 So. 900, and Monroe v. D'Aunoy (La. App.) 143 So. 716, 717, in support of their contention that Ponder was guilty of no actionable negligence at all. In the first of these cases the court found that the accident was caused from a deflated front tire, unknown to the defendant, and the loose gravel present at the place where the car overturn-

ed. Damages were not allowed. In the second case, a different state of facts existed. No damages were allowed. That case turned upon the point disclosed from the following paragraph quoted from the court's opinion:

"Unless, then, there was something apparent on or in the surface of the roadway to indicate that there was danger, it was not negligence to operate the car at such speed in the open country, far from congested traffic and on a straight road. In Delaune v. Breaux, 174 La. 43, 139 So. 753, 754, the Supreme Court of Louisiana said:

" 'It was not negligence on the part of Breaux to drive his car on a graveled highway, in the nighttime, at a speed of from thirty to thirty-five miles an hour, the highway being straight at that point for some distance.' "

In neither of these cases, nor in the Delaune Case, does a sharp curve in the road, to the knowledge of the driver, play a part, but, on the contrary, the roads were straight and there was nothing apparent ahead that indicated other than that it was safe to drive as was done in each case.

■ Defendants argue that as plaintiff, who is twenty-eight years old, lived daily with her parents in their home in Ruston, and was interested in the trip to see the football game, and, further, in view of the fact that she often and regularly used the family car, she did not occupy, with respect to her father, the status of an invited guest. The evidence, as found by the lower court, clearly shows she was invited to go along with the others. Of course, she was interested in the trip to the extent of seeing the game, or else she would not have made the trip. She exercised no control over the operation of the car, nor over the movements of the other parties therein. Kimbro v. Holladay et al. (La. App.) 154 So. 369.

■ Cases of this kind, wherein it is obvious that the insurer is the real defendant, have a little bad flavor to them, but there is no law that exempts the father from liability for damages to his major child, caused by his own negligence. The policy of insurance carries no such exception.

We would be disposed to increase the judgment in plaintiff's favor for pain and suffering, but she has been given all she sued for on this account.

The judgment appealed from is affirmed, with costs.