## McCann, Appellant, v. Pennsylvania Railroad Company.

Argued April 26, 1935.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Clair D. Moss,* for appellant.

*Samuel W. Pringle,* of *Dalzell, McFall & Pringle,* for
appellee.

OPINION BY JAMES, J., October 2, 1935:

Plaintiff has appealed from the entry of judgment
notwithstanding a verdict which plaintiff had obtained
for damages to his automobile by being struck by de-
fendant's train.

At about 3 A. M. on February 28, 1931, plaintiff
accompanied by Matthew McVicar and Miss Jane Sing-
ler, now plaintiff's wife, was driving southwardly from
Pittsburgh to Sturgeon. They had driven on the wrong
road, had turned around and on their return made a
left turn up a grade or hill and as described by plain-
tiff, "The car started bouncing, it felt like rough road
and I went to stop and when I got stopped I was on
the railroad tracks." The left side of the auto was on
the railroad tracks, the front wheels having crossed
four rails and the rear wheels, two rails, so that the
front end was on one side and the rear end on the other
side of the second tracks. The first track was the west-

bound track; the second, the eastbound; and the third a freight track. While they were trying to extricate the car, it was struck by a freight train running on the first or west bound track. Plaintiff was travelling, according to his testimony, about ten miles an hour and his lights being lit he could see ahead about 100 to 150 feet. His explanation of his failure to see the crossing was that although looking ahead, "I couldn't observe it very well because I was going up grade and the lights were focussed into the air and by the time the back end of the machine gets up then your lights would be down on the road, by then I was halfway across the crossing." Plaintiff did not observe any crossing sign prior to the accident but the following morning saw one located at the right of the roadway a short distance from the tracks. Just prior to the collision, McVicar had proceeded up the track on the engineer's side of the train about 200 feet and a resident of the neighborhood, who had been awakened, had gone up the track on the fireman's side with a flash light. The headlight on the train was burning. No testimony was offered to show the size of the train, the speed at which it was travelling, or whether the crew of the train had any knowledge of the presence of the automobile on the track. The crossing was on a left curve, and the lights of the engine were cast towards the opposite side from which the automobile was hit, while the lights of the automobile were directed in the opposite direction. The crossing was constructed of limestone ballast with fine stone screenings and with steel guard rails on either side of the running tracks. Plaintiff admitted the crossing was "plenty wide enough for two cars to pass." Under these circumstances, the court below was correct in entering judgment non obstante veredicto either on the ground of contributory negligence or failure to establish negligence in the operation of the train.

It is obvious that plaintiff's getting off the crossing

was not due to any negligence of the defendant in the construction, maintenance or width of the crossing, but was due solely to the manner of plaintiff's operation of the automobile. It is idle for him to say that he was looking ahead at the time he reached the crossing, as according to his testimony, the lights showed ahead between 100 to 150 feet. If he was travelling up a grade, at the rate of ten miles, the top of the grade must have been visible to him for some distance, beyond which point it was his duty to look ahead, and before proceeding further, determine what the condition of the road bed was; and had he done so, he would have remained within the crossing and thus avoided the accident. The fact that he was making a left turn on an up-grade, did not lessen his duty to determine where he was going. "It is the duty of a chauffeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. For example, it is the chauffeur's duty to keep his car under such control that whenever his headlight has brought a grade crossing into view he can stop before reaching it": Serfas v. Lehigh & New England R. R. Co., 270 Pa. 306-308, 113 A. 370. The failure of plaintiff to observe the grade crossing clearly indicated that he did not look where he was driving in which event he was guilty of contributory negligence: Pittsburgh Transport Co. v. Penna. R. R. Co., 96 Pa. Superior Ct. 302.

We fail to find any proof of negligence. The record contains no facts to prove the size or weight of the train or its rate of speed. Assuming that efforts were made by plaintiff's companion and the bystander to warn the trainmen, the facts do not establish that the engineer or fireman saw them or that they could or

should have seen the plaintiff's car in time to avoid the accident.

Judgment affirmed.